1400

AMERICAN MOTORISTS INSURANCE CO., Appellant v. S. C. SECOND INJURY FUND, Respondent. In Re Jack J. MOORE v. CHICOPEE MANUFACTURING CO.

(386 S. E. (2d) 276)

Court of Appeals

*Michael A. Farry,* of *Horton, Drawdy, Ward & Johnson,* Greenville, *for appellant.*

*Edgar W. Dickson,* Columbia, *for respondent.*

Heard Sept. 13, 1989.

Decided Oct. 30, 1989.

GARDNER, Judge:

This is a worker's compensation action. The Full Commission found that the claimant, Jack J. Moore, former employee of Chicopee Manufacturing Company, was totally disabled by reason of byssinosis. On appeal, the Commission's findings of fact and conclusions of law were affirmed by the Circuit Court and later by the Supreme Court of South Carolina. The carrier, American Motorists Insurance Company, in this action, seeks reimbursement from the South Carolina Second Injury Fund (Fund). The Hearing Commissioner found for the carrier; the Full Commissioner found for the Fund and this finding was affirmed by the Circuit Court. We affirm.

## ISSUE

The only issue of merit is whether there is substantial evidence of record to support the findings of fact as set forth by the Full Commission, with specific attention given to reimbursement requirements found in Section 42-9-400.

## FACTS

Moore worked for Chicopee Manufacturing Company for twenty-five years;[1] from 1958 to 1983. For the first ten years, he worked as a spare hand, working at all types of jobs in the spinning department. Then he worked for nearly twelve years in the roller repair shop which was on the same floor as the carding room. Mr. Moore testified that there was a great deal of dust and lint pulled into the shop by the ventilator fan which had to handle fumes from solvents. In 1978 the claimant developed a sensation of tightness in his chest and in 1979 he began to complain about physical problems resulting from the conditions of the roller shop. He said that he was suffering from nausea and dizziness. The company physician, Dr. Robertson, referred the claimant to Dr. Duffell of Atlanta, Georgia, who reported that the claimant suffered from a 10 percent disability due to byssinosis. The claimant was then transferred to the grounds crew and worked on the outside of the plant. The claimant testified about his work on the grounds crew as follows:

> Well I rode a riding mower. Sometimes they put me to try to push a mower and I couldn't do that but a minute or two at a time, and I'd have to stop and rest. That was the extent, a few minutes at the time.

The claimant testified that he continued to work as best he could, however, he was only able to average approximately two hours a day of physical work. He testified, "I just done the best I could and sat under a shade tree in the canteen." After work, the claimant testified that he would be completely exhausted and would have to go home and lie down. He ceased working on April 30, 1983, and has been unable to seek any gainful employment. The claimant testi-

---

[1] The twenty-five year period was consecutive except for a six to eight week hiatus with another employer.

fied, "when I try to perform work, I get out of breath ... my chest tightens up." Incidentally, the claimant never smoked.

Dr. Stewart Barnes, a certified internist, testified on behalf of claimant. As a result of his examination and evaluation, it was Dr. Barnes' opinion that the claimant does, in fact, suffer from the disease knwn as byssinosis. Dr. Barnes testified, "I believe that it is related to his textile employment." He stated that the claimant will continue to need medical care and treatment. Specifically, he testified as follows:

> The laboratory findings, specifically, indicate pulmonary disease of a moderately severe nature. The physiologic data, looking at ventilatory function, basically the same, moderately severe decrease in pulmonary function. The physical examination demonstrates wheezing, marked obesity, the history indicates nocturnal symptoms, lying down at night, putting all these factors together as my medical judgment, this man is totally disabled.

In August 1983, Dr. Barnes determined that the claimant was totally and permanently impaired due to byssinosis.

The South Carolina Workers' Compensation Commission awarded Mr. Moore compensation and medical benefits for permanent total disability. This decision was affirmed by the Full Commission, the Circuit Court and the South Carolina Supreme Court. The carrier then sought reimbursement from the Second Injury Fund. The Hearing Commissioner ordered reimbursement; the Full Commission reversed and its order was affirmed by the Circuit Court. We affirm.

## DISCUSSION

The Full Commission, not this Court, is the fact finder. It is not within our province to reverse findings supported by substantial evidence. *Hunter v. Patrick Construction Company*, 289 S. C. 46, 344 S. E. (2d) 613 (1986). The only issue addressable by this Court is whether the decision of the Full Commission is supported by substantial evidence. *Lark v. Bi-Lo, Inc.*, 276 S. C. 130, 276 S. E. (2d) 304 (1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must be

enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Lark,* 276 S. C. at 136, 276 S. E. (2d) at 307. Our deference to the Full Commission on findings of fact is obvious. The Full Commission is affirmatively charged with answering questions that come under the Workers' Compensation title. On review of the acts or orders of administrative agencies, the courts will presume, among other things, that the agency action is regular and correct, and that the orders and decisions of the agency are valid and reasonable. 73A C. J. S. *Public Administrative Law and Procedure* Section 220(a) (1983).

In the case at bar the Hearing Commissioner and the Full Commission reached antithetical conclusions. Thus it is appropriate to note their distinctive functions. The Hearing Commissioner is primarily concerned with gathering evidence. The Full Commission is the ultimate fact-finder and may make findings either consistent or inconsistent with those of the Hearing Commissioner.

The Second Injury Fund was created in 1972. *See* Section 42-9-400, Code of Laws of South Carolina (1976). One of the purposes in establishing the Second Injury Fund was to encourage employers to hire handicapped persons by providing reimbursement to the employer or insurer for compensation paid as a result of a second injury. *Boone's Masonry Construction Co., Inc. v. South Carolina Second Injury Fund,* 267 S. C. 277, 227 S. E. (2d) 659 (1976). The Fund was designed to compensate handicapped workers fully for subsequent injuries without penalizing employers for hiring them in the first place. *Wyndham v. R. A. & E. M. Thornley and Co.,* 291 S. C. 496, 354 S. E. (2d) 399 (Ct. App. 1987); Custy, *The Second Injury Fund: Encouraging Employment of the Handicapped Worker in South Carolina,* 27 S. C. L. Rev. 661, 662 (1976). The Second Injury Fund granted a new remedy or right of reimbursement to the insurer; and the Legislature could properly impose such reasonable terms and conditions upon the exercise of such

right as it deemed appropriate. The right of a claimant to secure reimbursement under the statute depends upon complete compliance with the requirements imposed for recovery. *Boone's Masonry Construction Co.*, 267 S. C. at 282, 227 S. E. (2d) at 661. The success and future of the Second Injury Fund depend upon proper and careful application of these statutory requirements.

Section 42-9-400, Code of Laws of South Carolina (1976) provides in pertinent part:

> **Section 42-9-400. Manner in which employer or insurance carrier shall be reimbursed from Second Injury Fund when disability results from preexisting impairment and subsequent injury.**
>
> (a) If an employee who has a permanent physical impairment from any cause or origin *incurs a subsequent disability from injury by accident* arising out of and in the course of his employment, resulting in compensation and medical payments liability or either, for disability *that is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggravation of the preexisting impairment,* than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall in the first instance pay all awards of compensation and medical benefits provided by this Title; but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund as created by Section 42-7-310 for compensation and medical benefits in the following manner: . . . . [Emphasis ours.]

The Full Commission found, *inter alia,* (1) that no permanent physical impairment preexisted Mr. Moore's accident on April 30, 1983, (2) the accident of April 30, 1983, did not combine with or aggravate any previous physical impairment so as to increase the disability or medical cost and (3) that the factual evidence does not meet the necessary prerequisites for reimbursements under the statute.

There is substantial evidence of record that the accident of April 30, 1983 was, "the straw that broke the camel's back" in the progression of totally disabling byssinosis.

The medical records and employee history together provide substantial evidence to show that the claimant might well have been totally disabled by byssinosis in 1982. His lung capacity tests in 1982 and those in 1983 were essentially the same. It is to be recalled that the claimant testified that after he was transferred to the outside of the mill to the grounds, he could only struggle through a couple of hours a day of riding a lawn mower and could not, under any circumstances, push a lawn mower. We therefore find and hold that there is substantial evidence, medical and otherwise, to support the thesis that the claimant might well have been totally and permanently disabled in 1982. Consequently, there was no subsequent or second injury. Rather, as stated, the evidence supports the proposition that the claimant suffered a logical progression of an occupational disease indigenous to the industry he served for twenty-five years.

Stated differently, we find that the situation that existed in 1982 was not aggravated by his work thereafter nor did the subsequent work combine with the preexisting impairment to bring about claimant's disability. There is evidence to the effect that the claimant's condition in 1983 was essentially the same as his condition in 1982, with no further aggravation or combination of subsequent events other than the logical progression of the disabling characteristics of byssinosis. We therefore hold that there is of record more than substantial evidence to suport the Commission's findings of fact.

## CONCLUSION

The Full Commission found that there was no preexisting physical impairment upon the claimant's becoming disabled on April 30, 1983, and further the Full Commission found in effect that the claimant's working in the yard riding a lawn mower for a couple of hours a day did not combine with or aggravate a previous physical impairment so as to increase the disability or medical costs resulting from the claimant's disability. This finding of fact was concurred in by the trial judge and we find substantial evidence of record to support the conclusion of the Hearing Commissioner. It is our holding that the yard work away from cotton dust in which the claimant was able to ride a lawn mower for a couple of hours

a day did not aggravate a preexisting condition nor did it bring about a condition which added to or combined with a previous condition to create the claimant's disability. There is an abundance of evidence, let alone sufficient evidence, of record to support the proposition that the claimant became totally disabled on April 30, 1983, as a result of the progression of byssinosis which is a disease indigenous to the cotton industry. Claimant worked for the company for approximately twenty-five years and it is our opinion that during this twenty-five year period the claimant developed disabling byssinosis as a result of breathing cotton dust which culminated in his disability on April 30, 1983. We, therefore, hold that there is substantial evidence of record supporting the findings of fact made by the Full Commission and therefore affirm the appealed order.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.

